COURT OF CRIMINAL APPEALS
STATE OF TEXAS

NO. 74,253

5TH DISTRICT COURT OF BOWIE COUNTY
STATE OF TEXAS

NO. 99F0506-005-A

EX PARTE WILLIAM SPEER

Applicant,

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 31, 2003, the Court, having reviewed the Application for Writ of Habeas Corpus filed by William Speer and the State's Response thereto, determined that no unresolved factual issues material to the legality of the applicant's confinement exist. Pursuant to §8(a) of Art. 11.071, Code of Criminal Procedure, the Court entered its written order making that determination and directing the parties to file proposed findings of fact and conclusions of law for the Court to consider. The State filed its Proposed Findings of Fact and Conclusions of Law on December 2, 2003. The Defendant filed no proposed findings or conclusions.

The Court, having considered the State's Proposed Findings of Fact and Conclusions of Law, the transcript of trial, the clerk's file and the Petitioner's Application and the State's Response, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The applicant, Williams Speer, was indicted and convicted of the felony offense of capital murder on Cause Number 99F0506-005 in the 5th District Court of Bowie County, Texas. [CR, VI, Pp. 21-22]

2. The Applicant was represented during trial by counsel David Carter and counsel Richard Dodson. [CR, VI, Pp. 21-22]

3. On October 31, 2001, after the jury affirmatively answered the first and second special issues, the trial court assessed punishment at death by lethal injection. [CR, VI Pp. 154-163]

1

**EXHIBIT Y**

4. The Court of Criminal Appeals affirmed the appellant's conviction in an unpublished opinion. Speers v. State, No. 74,253 (Tex. Crim. App. 2003).

### First Ground for Relief

*Counsel failed to investigate or present evidence which would have mitigated against the imposition of the death penalty.*

5. Applicant's trial counsel investigated Mr. Speer's past criminal record, psychological evaluations, and family history to develop mitigating evidence during the punishment phase of the trial. [Affidavit of David Carter and Richard Dodson]

6. Applicant's trial counsel interviewed prospective witnesses for purposes of mitigation during the punishment phase of the trial to included family members and friends. [Affidavit of David Carter and Richard Dodson]

7. Applicant's trial counsel advised and consulted with applicant regarding the punishment phase of the trial and the mitigation evidence available for this purposes prior to and during trial of this cause. [Affidavit of David Carter and Richard Dodson]

8. This Court finds that applicant's trial counsel conducted interviews and investigated facts relating to mitigation issues during the punishment phase of the trial.

9. This Court finds that applicant's trial counsel presented mitigating evidence during the trial of this cause.

### Second ground for relief

*Prospective Juror Louis Viramontes was erroneously removed for cause thus violating Petitioner's rights under the Sixth Amendment to the United States Constitution.*

10. At the beginning of the individual voir dire of Juror Louis Viramontes, Viramontes stated that it was difficult for him to believe in the death penalty based on his religious beliefs. [RR, V8, Pp. 30]

11. When filling out his written jury questionnaire, Juror Louis Viramontes answered "I believe the death penalty is appropriate in some murder cases, but I could never return a verdict which assessed the death penalty. [RR, V8, Pp. 32]

2

12. During voir dire, Juror Louis Viramontes at one point advised Applicant's counsel that he could in fact answer the special issues. [RR, V8, P41]

13. At the conclusion of the individual voir dire of Louis Viramontes and after his answer noted in 9 above, Viramontes responded to a question from counsel as to whether he could answer the special issue questions knowing he would have to give the death penalty that he could not do that. [RR, V8, P.41]

14. The Court finds, based on the entire voir dire of Juror Louis Viramontes, that the answers given by Viramontes were vacillating between the ability to answer the special issues based on the evidence and the inability to answer the special issues if it would result in the death penalty. [RR, V8, PP. 30-49]

### Third ground for relief

A. Prosecutor misconduct deprived Petitioner of his right to Due Process by impermissibly vouching for various witnesses' credibility.

15. During the prosecutor's cross-examination of a witness, applicant's trial counsel objected to a question asked by the prosecutor – "Who do you think we're talking about here? Does that mean anything to you?" [RR, V11, P. 33]

16. Following the applicant's trial counsel's objection to this question an exchange occurred between the court, prosecutor, and applicant's counsel and in response to applicant's trial counsel's statement – "I'm objecting to him asking this witness to speculate what that means without some foundation of some term as an inmate, he recognizes" to which the prosecutor replied – "I'm not even asking for the truth of the matter. I think the man is lying and I want to see if he is going to tell the truth." [RR, V11, P33]

17. Following the prosecutor's statement noted in 13 above, the applicant's attorney then objected to the prosecutor's remark as a side bar remark. [RR, V11, P.34]

18. After this exchange, the trial judge sustained the objection as to the side bar remark. [RR, V11, P. 34]

19. The Court finds that the remark made was made in response to argument invited by the applicant in response to the first question made by applicant's counsel.

B. *Prosecutor's Opinion as to Witness' Veracity through facial expressions.*

20. Applicant's counsel lodged an objection that during the examination of the applicant's witness Abbot, the prosecutor "made a face and was shaking his head" after asking questions of the witness. [RR, V11, P36]

21. The objection was sustained and the prosecutor was ordered no to shake his head or make a face. [RR, V11, P36]

22. the objection to shaking the head and making a face was made at the conclusion of the testimony of Mr. Abbott.

23. The Court finds that the objection was made and the requested instruction was given and that the applicant's counsel made no further record or indicated problems with his conduct from the prosecutor during the remainder of the applicant's presentation of evidence during the guilt/innocence phase or during any of the remainder of the trial.

C. *Prosecutor's Reference to a Defense Witness as a Liar in Closing Argument*

24. During closing arguments of the guilt/innocence phase of trial the prosecutor made the following statement – "And you heard from Richie Rich, the biggest liar of all that you heard from, and he had no good excuse why this was written to Ellis, when the order was to write it to Innes. Why? Because it was a lie. There was no order. He killed him. He took credit for it." [RR V12, P19]

25. Prior to the prosecutor's comments referring to this witness, applicant's counsel made the following comments as to the State's witnesses –

    What do we learn from the evidence about inmates? They are not to be trusted. [RR, V 12, P 19]

    Investigator Dodson told you, they lie to me everyday. . . They lie. Every inmate that I asked on the stand said, yes, they're liars. [RR, V12, P20]

    They Lied to you on the witness stand, Ladies and Gentlemen. All five of them did, and I'll take them one at a time. [RR, V12, P20]

26. In addition to the comments noted in 22 above, the applicant's closing argument continued to direct attention to the fact the witnesses called by the state were liars.

4

27. The Court finds that the comments made by the prosecutor came after those comments made by applicant's attorney during closing argument.

### Fourth Ground for Relief

*Petitioner's Constitutional right to a speedy trial was violated.*

28. Gary Dickenson, the victim in this case, was killed on July 11, 1997. [CR, VI, P2]

29. William Speer was indicted on November 4, 1999. [CR, V1, P2]

30. On December 1, 1999, the Court requested legal representation for William Speer pursuant to Article 26.051(d) of the Texas Code of Criminal Procedure. [CR, V1, P15]

31. On January 31, 2000, Carol Helms with State Counsel for Offenders, who was appointed as a result of the request pursuant to Article 26.051(d) filed a Motion to Withdraw from representation of William Speer. [CR, V1, PP. 16-17]

32. On February 4, 2000, Carol Helms' Motion to Withdraw was granted. [CR, V1, P19]

33. On February 7, 2000, applicant was served a copy of the indictment in this cause. [CR, V1, P20]

34. On March 31, 2000, Richard Dodson and David Carter were appointed to represent applicant. [CR, V1, PP. 21-24]

35. On April 20, 2000, a pretrial hearing in this cause combined with co-defendants established that the co-defendant Anibal Canales would be tried before applicant. [CR, V1, PP.10-14; 25-35; 43-50; 66-84; 86-88; 172-199]

36. Between March 31, 2000 and August 20, 2001, counsel for applicant engaged in discovery and pretrial matters on behalf of the applicant. [CR, V1, PP. 10-14; 25-35; 43-50; 66-84; 86-88; 172-199]

37. On August 20, 2001, a Motion to Dismiss for Lack of Speedy Trial was filed by applicant's counsel. [CR, V1, PP.86-87]

38. A hearing on the Motion to Dismiss for Lack of Speedy Trial was heard on August 23, 2001. [CR, V1, PP. 84]

39. The Court denied the applicant's Motion to Dismiss for Lack of Speedy Trial and set the case for trial October 16, 2001.

40. The Court finds that from the date of indictment to the date of trial a total of 611 days passed.

41. The Court finds that from the date counsel was finally appointed and trial on the merits began, a total of 564 days had passed.

42. The Court finds that no request for speedy trial was ever filed.

43. The Court finds that between the time the Motion to Dismiss for Lack of Speedy Trial was filed and the hearing on the motion was 3 days.

44. The Court finds that the trial was set on October 16, 2001.

45. The Court finds that at the time of the trial the applicant was serving a life sentence in the Texas Department of Criminal Justice for murder.

## CONCLUSIONS OF LAW

### First Ground for Relief

*Counsel failed to investigate or present evidence which would have mitigated against the imposition of the death penalty.*

1. The applicant has failed to show that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668 (1984).

2. Even if counsel's performance had been deficient, the applicant has failed to show that counsel's performance resulted in egregious errors which deprived applicant of a fair trial. *Strickland* at 691.

3. The applicant fails to show deficient performance, much less harm, based on the allegation of ineffective assistance of counsel for failure to adequately investigate and interview witnesses for punishment. *Strickland*.

4. Counsel cannot be considered ineffective for making reasonable, strategic decisions after consultation with applicant, not to present certain evidence for purposes of mitigation.

5. The applicant fails to show that he received ineffective assistance of counsel, in violation of U.S. CONST. amends VI, VIII, and XIV and TEX. CONST. art. I, §§ 10, 13, 19.

### Second Ground for Relief

*Prospective Juror Louis Viramontes was erroneously removed for cause thus violating Petitioner's rights under the Sixth Amendment to the Untied States Constitution.*

6. The applicant has failed to show that the trial court's granting of a challenge for cause as to Juror Viramontes was error. TEX. CODE CRIM. PROC. ANN. Art. 35.16 (Vernon's Ann. 1989).

7. The applicant has failed to show that the trial excused Juror Viramontes simply because his beliefs on the death penalty might influence the decision making process. *Wainwright v. Witt*, 469 U.S. 412 (1985).

8. After viewing Juror Viramontes' demeanor and listing to his responses to questioning by trial counsel for applicant and the state, the court correctly excused Juror Viramontes for his vacillating, unclear and contradictory answers. *Rocha v. State*, 16 S.W.3d 1, 6 (Tex. Crim. App. 2000) and *Soria v. State*, 933 S.W.2d 46, 66 (Tex. Crim. App. 1996).

9. The Court correctly determined that Juror Viramontes' views on capital punishment were such that they would prevent or substantially impair his performance of his duties as a juror in accordance with his instructs and his oath as a juror. *Feldman v. State*, 71 S.W.3d 738 (Tex. Crim. App. 2002); see also, *Clark v. State*, 929 S.W.2d 5, 6-7 (Tex. Crim. App. 1996), cert denied, 520 U.S. 1116 (1997).

### Third Ground for Relief

A. Prosecutorial misconduct deprived Petitioner of his right to Due Process by impermissible vouching for various witnesses' credibility.

10. The applicant fails to show that the remark –"I'm not even asking for the truth of the matter. I think the man is lying, and I want to see if he is going to tell the truth" – made by the prosecutor was of a nature to interfere with applicant's right to a fair trial. *In Re W.G.W.*, 812 S.W.2d 409, 416 (Tex. App. - - Houston [1st Dist.] 1991, no writ).

11. The Court correctly sustained the objection to the remark noted in 7 above on the grounds that the comment was a sidebar remark by the prosecutor.

12. Applicant, while making the objection to the comment set forth in seven (7) above, has failed to take all steps necessary to establish error has occurred as a result of the comment.

B. *Prosecutor's Opinion as to Witness' Veracity through facial expressions.*

13. The trial court properly instructed the prosecutor to refrain from making facial expressions in response to testimony from a witness for the defense.

14. The applicant has failed to establish that the facial expression made by the prosecutor were manifestly improper or so prejudicial as to deny appellant a fair trial. United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995); see also, United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993) and Bell v. State, 742 S.W.2d 780, 802.

15. The Court properly found that the remark set forth in seven (7) above were isolated and did not divert the jury's attention to extraneous matters.

C. *Prosecutor's Reference to a Defense Witness as a Liar in Closing Argument.*

16. The trial court properly found that the remarks – "And you heard from Richie Rich, the biggest liar of them all. . . Because it was a lie" - - made by the prosecutor during closing arguments was provoked by the applicant's counsel during closing argument. United States v. Cooper, 827 F.2d 991 (4th Cir. 1987) and McDuffie v. State, 854 S.W.2d 195 (Tex. App. - - Beaumont, 1993).

17. The trial court properly concluded that the remarks as noted in thirteen (13) above, were proper responses to applicant's arguments.

**Fourth Ground for Relief**

*Petitioner's Constitutional right to a speedy trial was violated.*

18. The length of delay of more than two years from the date of indictment to the date of trial is presumptively prejudicial and requires the court to review all factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).

19. The applicant failed to assert his right to a speedy trial prior to filing his motion to dismiss for failure to hold a speedy trial.

20. There was no deliberate attempt by the state to prejudice the defense. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

8

21. The court properly determined that the appellant was not prejudiced by the length of time from indictment to the time of trial. *Dogget v. United States*, 505 U.S. 647 (1992).

22. The court properly determined that the applicant has suffered no harm pursuant to the delay from indictment to trial.

23. The applicant fails to demonstrate that his conviction was unlawfully obtained. Accordingly, it is recommended to the Texas Court of Criminal Appeals that relief be denied.

Signed and entered this 30th day of April, 2004.

Ralph K. Burgess
District Judge, 5th Judicial District
Bowie County, Texas